**Wallace LaFOND, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 5, 2007.

Decided Oct. 1, 2007.

Richard S. Luse, Bethlehem, for petitioner.

W. Scott Foster, Asst. Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, Wallace LaFond (Recipient) petitions for review of an order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA) that upheld a medical assistance (MA) overpayment claim against him in the amount of $29,201.26. The overpayment amount represents one half of the net proceeds from a sale of real estate Recipient held as a joint tenant with his son, William LaFond (Son). Recipient asserts DPW's Administrative Law Judge (ALJ) erred in counting half the proceeds from the sale as an "available resource" in determining Recipient's MA eligibility because he contributed nothing of value to either purchase or maintain the property. Recipient further asserts the particular circumstances here warrant exclusion of the sale proceeds from consideration as an available resource in determining Recipient's MA eligibility. For the following reasons, we affirm.

The ALJ found the following facts. While living in Illinois, Recipient suffered a stroke during the 2002 Easter weekend. Approximately five weeks later, Recipient moved in with Son in his Pennsylvania mobile home. However, Son's mobile home lacked the physical accommodations Recipient required.

As such, Son applied for a mortgage to purchase a house for himself and Recipient. Because of Son's financial problems, a mortgage broker advised Son his credit application might not be approved. The mortgage broker suggested adding Recipient's name to the application. They did so, and the mortgage was approved.

In November 2002, Recipient and Son settled on a house in Bethlehem, Pa. Their deed indicates they held the property as joint tenants with right of survivorship. *See* ALJ's Ex. C–2 (Deed for Resident Property); Reproduced Record (R.R.) at 10a–12a. The deed also indicates they paid $124,900 for the property. From January 2003 until September 2005, Son paid the mortgage and all expenses for maintenance of the property, which included some major repairs. At the time of the purchase, Recipient's income consisted of a Social Security benefit of approximately $1,000 per month. Recipient had no other assets.

In March 2004, Recipient entered Gracedale Nursing Home in Northampton County and began receiving MA nursing home care (MA/NHC) benefits. Recipient remained there until March 30, 2006, when he was discharged to move to a veterans' facility in Illinois.

Prior to Recipient's return to Illinois, Son sold the property for $185,000 and received $58,402.53 in net proceeds at settlement. *See* ALJ's Ex. C–5 (HUD Settlement Statement, 11/29/2002); R.R. at 60a–61a. The settlement document listed both Recipient and Son as sellers. However, Recipient and Son failed to report the sale to the Northampton County Assistance Office (CAO) as required by law.

Upon notice of Recipient's move back to Illinois, Gail Huertas, a CAO caseworker (Caseworker) reviewed Recipient's file prior to closing out his Pennsylvania MA/

NHC benefits. Caseworker discovered there was originally a residential property listed in both names. She looked up the address on the Northampton County website and discovered the property was sold. Caseworker also observed neither Son nor Recipient reported the sale to the CAO. As a result, Caseworker wrote up an overpayment and referred the matter to the Office of Inspector General, the agency responsible for performing collection activities in MA programs.

In August 2006, the Inspector General mailed Recipient a claim letter. *See* ALJ's Ex. C–6 (Claim Letter and Computation of MA Overpayment); R.R. at 19a–23a. It stated:

> The [Commonwealth] has established a[MA] claim regarding [Recipient].... On July 30, 2004, [Recipient] was authorized under category PAN, which has a resource limit of $2,000.00.
>
> It has come to the attention of the Office of Inspector General that property ... owned by [Recipient and Son] was sold on September 25, 2005. This sale was not reported to the [CAO] within the required seven-day period. [Recipient] received $29,201.26 as his share of the proceeds that caused his resources to exceed the allowable limit, making him ineligible for [MA]. The Commonwealth expended $29,757.01 on [Recipient] from October 1, 2005 through March 31, 2006. As the amount of MA expended on [Recipient's] behalf exceeds $29,757.01, the claim is for $29,201.26.

R.R. at 19a. The Inspector General cited Section 1408(c)(6)(i) of the Public Welfare Code (Welfare Code) [1] as authority for the claim. Section 1408(c)(6)(i) provides:

> If it is found that a recipient or a member of his family or household, who

would have been ineligible for medical assistance, possessed unreported real or personal property in excess of the amount permitted by law, the amount collectible shall be limited to an amount equal to the market value of such unreported property or the amount of medical assistance granted during the period it was held up to the date the unreported excess real or personal property is identified, whichever is less. Repayment of the overpayment shall be sought from the recipient, the person receiving or holding such property, the recipient's estate and/or survivors benefiting from receiving such property. Proof of date of acquisition of such property must be provided by the recipient or person acting on his behalf.

Son appealed on Recipient's behalf. Before the ALJ, Son testified he paid for everything related to the property. He also presented supporting documentation. *See* ALJ's Ex. A–5 (Son's Summary of Household Expenses and Supporting Documents); R.R. at 40a–59a. Son testified Recipient merely signed the mortgage application. Recipient had no assets; he used his monthly income of approximately $1,000 for personal expenses, including clothing, dentures and hearing aids. Recipient could not perform any physical labor. After Recipient entered the Pennsylvania nursing home, it became apparent he could not return to the residence. Thereafter, Son put the house up for sale in order to move closer to his employment in New York City. Son also stated his failure to report the sale to the CAO was not an intentional act designed to avoid paying the Commonwealth; he did not think Recipient had a financial interest in the property.

1. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 1408(c)(6)(i).

The ALJ, however, upheld the overpayment claim. DPW, the ALJ emphasized, is charged with the responsibility of identifying and recovering MA overpayments. 55 Pa.Code § 255.4(a). Further, hearing officers are strictly bound by DPW's regulations and may not invalidate or modify them. 55 Pa.Code § 275.4(h)(1)(iv). The ALJ also noted a recipient's available resources include both real and personal property, including partial ownership interests. *See* 55 Pa.Code § 178.2 (definition of resources); 55 Pa.Code § 178.3(a) (verification of ownership and disposition of resources); and 55 Pa.Code § 178.4(a) (available resources, including partial interests, are applied against applicant/recipient's resource limit for appropriate MA program).

The ALJ thus concluded half the sale proceeds counted as an available resource for determining Recipient's continuing eligibility for MA benefits. As a result of the sale, Recipient's resources exceeded his eligibility limits while he was in the nursing home at public expense. Consequently, Recipient received MA benefits while ineligible, and an overpayment resulted. Therefore, the ALJ denied Recipient's appeal.

■ The BHA affirmed. Recipient's appeal followed.[2]

Recipient argues the ALJ erred by counting Recipient's share of the sale proceeds as an "available resource" for determining his MA eligibility in view of the fact he contributed nothing financially to the purchase, maintenance or improvement of the property. He asserts this case presents a reverse set of circumstances from those typically encountered in "spend down" cases involving the appli-cation of DPW's regulations governing resource eligibility for MA benefits. *See* 55 Pa.Code §§ 178.1–178.7 (General Provisions for MA Resources Common to All Categories of MA).

Usually, Recipient claims, MA applicants/recipients attempt to transfer assets for less than fair market value in order to exclude them from being counted as resources for determining MA eligibility. Thus, Recipient argues the purpose of the MA resource eligibility regulations is to safeguard DPW from expending monies on individuals who unlawfully transfer assets to third parties for less than fair market value.

However, Recipient asserts the protective purpose of the MA resource eligibility provisions regulating asset transfer is not served in this case. Instead, Son transferred an asset to Recipient, without consideration, for purposes of his care. This delayed Recipient's entry into a nursing facility and his need for MA benefits. Further, Recipient obtained his ownership interest in the real estate as a gift; he did not pay fair market value for it. Given these circumstances, Recipient contends the Commonwealth erred by counting his half interest in the sale proceeds as an available resource in determining Recipient's continuing eligibility for MA benefits following the September 2005 sale of the property.

Recipient also advances the equitable argument that because he contributed nothing to the purchase, maintenance or improvement of the real estate, the Commonwealth, in the interest of fairness, should forgive this debt. Although Recipient does not dispute the fact his name

---

**2.** Our review of a BHA decision is limited to determining whether it is supported by substantial evidence and whether it is based on errors of law or constitutional violations. *Erie Homes for Children and Adults, Inc. v. Dep't of Pub. Welfare,* 833 A.2d 1201 (Pa. Cmwlth.2003).

appeared on the deed as a joint tenant with right of survivorship, he never considered or believed himself to be an owner of the property.

Citing Section 1408(c)(6)(i) of the Welfare Code, 62 P.S. § 1408(c)(6)(i), DPW responds that it need only show: Recipient possessed unreported property; the unreported property exceeded the amount permitted by law; the overpayment amount claimed is the lesser of the unreported property or the MA benefits paid during the period ineligibility; and, Son is the person receiving or holding the property.

DPW acknowledges real property used by a recipient as a residence may be excluded as a countable resource. 55 Pa. Code § 178.62. Nonetheless, if a recipient converts or sells the resource, whether excluded or non-excluded, the newly acquired cash is subject to appropriate criteria for continuing MA eligibility. 55 Pa. Code § 178.1(i).

Additionally, DPW asserts, in interpreting Section 1408(c)(6)(i) of the Welfare Code and the applicable MA resource regulations, "[where] the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit." 1 Pa. C.S. § 1921(b). This principle also applies when interpreting agency regulations. 1 Pa.Code § 1.7; *Dep't of Envtl. Res. v. Rannels,* 148 Pa.Cmwlth. 182, 610 A.2d 513 (1992).

Here, DPW asserts, there is no dispute Recipient and Son held the property as joint tenants when Recipient applied for MA benefits and when the property was sold. The settlement sheet from that sale identified both Recipient and Son as sellers. The sale netted a profit of $58,402.53. Recipient's half-interest amounted to $29,201.26. Son received the proceeds.

Noting the applicable MA eligibility resource limit at the time was $2,000, DPW asserts Recipient was ineligible for MA/NHC benefits from the time of the September 2005 sale. Between October 1, 2005 and March 31, 2006, the Commonwealth expended $29,757.01 in MA benefits for Recipient's nursing care. *See* ALJ's Ex. C–6 (Recipient's Long Term Care Payment Summary Sheet); R.R. at 21a. Pursuant to Section 1408(c)(6)(i) of the Welfare Code, the Commonwealth may collect Recipient's entire share of the proceeds from the sale because it is a lesser amount than the MA/NHC benefits provided to him during his period of ineligibility following sale of property. Noting neither Recipient nor Son reported the sale to the CAO, DPW asserts the overpayment met the criteria of Section 1408(c)(6)(i).

DPW also dismisses Recipient's equitable claim that the overpayment determination is unfair to Son, who purchased, maintained and improved the real estate. DPW asserts this Court rejected a similar argument in *McArthur v. Department of Public Welfare,* 674 A.2d 779 (Pa.Cmwlth. 1996). In *McArthur,* recipient and her non-recipient brother owned real estate as joint tenants. After the recipient began receiving MA benefits, they sold the real estate. DPW terminated the recipient's benefits on the ground she was entitled to one-half of the proceeds of the sale, a resource that exceeded her MA eligibility limits.

■ In affirming DPW, we held the proceeds from the sale constituted an available resource even if the non-recipient tenant actually paid the mortgage, taxes and all expenses related to the property. In a joint tenancy, each co-owner is entitled to an equal share of the proceeds from the sale of the real estate, regardless of who paid for it. *McArthur.* Further, in order to exclude the sale proceeds from a

recipient's available MA resources, the recipient must surrender or relinquish his or her right to the property prior to sale. *Id.*

■ We conclude the ALJ did not err in determining the Commonwealth established an overpayment claim under Section 1408(c)(6)(i) of the Welfare Code based on the unreported proceeds from the real estate sale. In sum, Recipient and Son owned the realty as joint tenants when Recipient applied for MA benefits and when the property was sold.

If a recipient sells a resource, whether excluded or non-excluded, the newly acquired cash is a resource subject to the appropriate criteria for continuing eligibility. 55 Pa.Code § 178.1(i); *McArthur.* Here, the sale netted a profit of $58,402.53. Recipient's half-interest in the proceeds amounted to $29,201.26. Son received the proceeds.

Recipient's share of the proceeds rendered him ineligible for MA/NHC benefits from the time of the September 2005 sale. Between October 1, 2005 and March 31, 2006, the Commonwealth expended $29,757.01 in MA/NHC benefits for Recipient's nursing care. Pursuant to Section 1408(c)(6)(i), the Commonwealth may collect Recipient's entire share of the proceeds from the sale because it is a lesser amount than the MA benefits provided to him during his period of ineligibility following the sale of property. Although this result may appear inequitable to Son, the language of Section 1408(c)(6)(i) is clear and cannot be disregarded. 1 Pa.C.S. § 1921(b); *Rannels.*

In regard to the equitable argument, we conclude *McArthur* controls. The non-recipient brother in *McArthur* advanced a similar claim that he was entitled to all of the sale proceeds because he paid the mortgage, taxes and all expenses related to the premises. In rejecting this argument, we noted it did not matter who paid the mortgage and other expenses. Rather, whether the recipient surrendered her right to the property prior to sale was the paramount issue. Because the recipient in *McArthur* did not relinquish her interest prior to sale, she remained entitled to one-half of the proceeds.

The same is true here. Although Recipient claims he never considered himself an owner, the parties do not dispute Recipient and Son owned the property as joint tenants. Further, Recipient never surrendered or otherwise relinquished his ownership interest in the property prior to the September 2005 sale. In addition, the settlement check, in the amount of $58,402.53, was payable to both Recipient and Son. Accordingly, we hold DPW properly counted Recipient's share of the net proceeds, $29,201.26, as an available resource in determining Recipient's continuing MA eligibility after the sale. 55 Pa.Code § 178.1(i); *McArthur.*

Discerning no error in the ALJ's decision, we affirm the BHA's final administrative action order.

### ORDER

AND NOW, this 1st day of October, 2007, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, is **AFFIRMED.**