**Charles M. MALOY, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 2010.

Decided March 23, 2010.

Publication Ordered June 10, 2010.

---

**3.** It is well-settled that this Court may affirm on any basis. *Lucas v. Lucas,* 882 A.2d 523, 531 (Pa.Super.2005).

E.J. Julian, Washington, for petitioner.

Alan J. Manderino, Asst. Counsel and Wesley J. Rish, Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge LEADBETTER.

Charles Maloy II (Charles II) appeals in the name of his deceased father, Charles M. Maloy (Charles M.), the order of the Department of Public Welfare (Department) Bureau of Hearings and Appeals holding Charles II personally liable for overpayments of Medical Assistance benefits made to Charles M. before his death. We affirm.

After determining that overpayment of benefits in the amount of $35,459.63 had been made to Charles M., the Department sent a letter demanding repayment to Charles II. Charles II requested a hearing, and the case was heard by an Administrative Law Judge (ALJ). In front of the ALJ, Charles II did not dispute that there had been an overpayment of benefits, but argued that repayment should come from Charles M.'s estate, not Charles II personally. However, the ALJ found it was proper for the Department to seek repayment directly from Charles II. Charles II appealed this decision, and the Bureau affirmed. An appeal to this court followed.

The facts of this case, as found by the ALJ, are essentially undisputed. In June 2005, Charles M. was admitted to a nursing home. The next month, Charles II applied to the Department, on his father's behalf, for Medicaid/Long Term Care benefits, to cover nursing home expenses. The application form, signed by Charles II, included, in a list of Charles M.'s assets, a house on Cortez Drive in Washington, Pennsylvania, which Charles M. owned free and clear. Previously, Charles M. had lived in the house with Charles II, but after Charles M. moved to the nursing home, Charles II lived in the house alone. The application included language obliging the recipient of benefits to notify the Department of any change in financial circumstances within seven days, and also stated that "any person enriched as a result of a transfer of assets or income, which would have affected [the recipient's] eligibility, will be liable for repayment of

those benefits issued incorrectly." Reproduced Record (R.R.) at 9. The application was approved, and the Department began paying a substantial portion of Charles M.'s nursing home expenses.

In November 2005, Charles II was appointed Charles M.'s legal guardian by the Washington County Orphans Court, with full authority to administer his assets. In March of 2006, he received permission from the court to transfer one-half of the Cortez Drive property to himself and to encumber the property with a $70,000 mortgage, which represented about half the assessed value of the property. The court ordered that $20,000 of the proceeds from the mortgage be used to cover Charles M.'s existing debts, and that the remaining $50,000 be used for his future expenses. After settling the debts, however, Charles II used the remaining money for purposes other than Charles M's needs. None of these transactions were reported to the Department.

After the money from the first mortgage was exhausted, Charles II returned to the Orphans Court and received permission to take out another mortgage on the Cortez Drive property, this time for $127,000. No careful accounting was made of these funds, but the ALJ found that, after the balance of the first mortgage was paid off, the bulk of the remainder was used for purposes other than the needs of Charles M. Again, this transaction was not reported to the Department. In March 2008, Charles II completed, on Charles M.'s behalf, a Department form reviewing Charles M's benefits. On this form, Charles M. did not report the transfer of half of the Cortez Drive property to himself, the two mortgages on the property, or any of the money received from them. Eventually, however, the Department discovered records of the property transfer, and concluded that the transaction had made Charles M. ineligible to receive benefits, and that as a consequence, the Department had overpaid him $35,459.63. While the Department was preparing its claim, Charles M. passed away, and the Department sought restitution from Charles II.

Both sides acknowledge that the transactions surrounding the Cortez Drive property made Charles M. ineligible to receive Department benefits, leading to the overpayment.[1] The sole question before us is whether the Department may seek repayment directly from Charles II, rather than from Charles M.'s estate.

■ The statute governing this situation provides that when undisclosed property[2] makes a recipient ineligible for benefits, leading to overpayment, "[r]epayment of the overpayment shall be sought from the recipient, the person receiving or holding such property, the recipient's estate and/or survivors benefiting from receiving such property." Section 1408(c)(6)(i) of the Public Welfare Code,[3] 62 P.S. § 1408(c)(6)(i).[4] The ALJ found that the

---

1. 55 Pa.Code § 178.104(b), provides that, "An institutionalized individual who disposes of assets for less than [fair market value]... is ineligible" for benefits in the amount of assets transferred.

2. Charles II does not challenge the Bureau's implicit understanding of the term "undisclosed property" to include undisclosed transactions which rendered property previously excluded from the resources considered available to the assistance recipient into resources deemed available for purposes of determining eligibility for benefits.

3. Act of June 13, 1967, P.L. 31, *as amended.*

4. In the ALJ's decision, the citation is to 62 P.S. § 1408(c)(6)(iii). This is clearly a typo, because section 1408(c)(6) does not include a subsection iii. Both subsections (c)(6)(i) and (c)(6)(ii), however, contain very similar language about repayments of overpayments, leading to some confusion as to which provi-

undisclosed transfer of the interest in the Cortez Drive property was for inadequate consideration, and that this transfer made Charles M. ineligible for benefits in the amount of the transferred interest. These findings, especially the former, are not challenged on appeal. As the person to whom the interest in the Cortez Drive property was transferred, Charles II certainly qualifies as one from whom repayment may be sought, because he is a "person receiving or holding [the undisclosed] property" that rendered Charles M. ineligible for benefits. Charles II's sole argument before this court, essentially, is that it would be unfair to collect repayment from him rather than from Charles M.'s estate.

 There appears to be no case law examining the process by which the Department chooses from whom to collect repayments. However, there is nothing in the plain language of the statute to suggest that the Department is in any way obligated to consider the equities when making that choice. The statute's clear purpose is to provide a mechanism for the Department to make the Commonwealth whole after it has overpaid a recipient. To accomplish this aim, the statute lists a number of potential parties from whom repayment can be collected, connected with "and/or." The use of this term implies that the legislature intended to give the Department wide latitude or broad discretion to choose which party, or group of parties from whom it would collect repayment. Of course, there is nothing in the statute to prevent the Department from considering fairness, but it would also be consistent with the statute's purpose for

it to consider a party's solvency, location, willingness to pay, or any of a number of other factors in making its decision. When, as here, a statute gives an agency discretionary powers, judicial review is limited to a determination of whether there has been a manifest or flagrant abuse of discretion, or a purely arbitrary execution of the agency's duties or functions. *City of Scranton v. Bureau of Workers' Comp.*, 787 A.2d 1094 (Pa. Cmwlth.2001).

There is nothing about the Department's decision to collect repayment from Charles II that approaches abuse of discretion or arbitrariness. Not only is the collection of repayment from Charles II expressly authorized, but it seems entirely appropriate, given that it was his actions that led to the overpayment. It was Charles II, in his role as guardian, who executed the transaction that made Charles M. ineligible for benefits; it was Charles II who failed to report that transaction to the Department, leading to the overpayment; and it was Charles II who failed to spend the proceeds of that transaction on the needs of Charles M., as he was required to do. Charles II argues that many of these actions were made under court supervision. However, there is no indication in the record that the Orphans Court was aware that Charles M. had recently applied for and been granted benefits or the way Charles II was spending the mortgage proceeds. Regardless, it is clear that holding Charles II accountable for the benefit overpayment is in no way arbitrary or an abuse of discretion.

For all the foregoing reasons, we affirm.

---

sion is at issue in this case. Indeed, in the briefs, the Department cites to subsection (c)(6)(i) and Charles II cites to subsection (c)(6)(ii). After a careful examination of the statute, we believe subsection (c)(6)(i) is the

provision implicated in this case, although the analysis would be substantially similar and the result would be the same under subsection (c)(6)(ii).

## ORDER

AND NOW, this 23rd day of March, 2010, the order of Chief Administrative Law Judge of the Department of Public Welfare Bureau of Hearings and Appeals in the above-captioned matter is hereby AFFIRMED.