the time. I asked you if you struck the suspect more than once and you said that you believed that you may have struck the suspect in the chest area more than once but your memory wasn't clear. You did agree that your use of force with four officers present against a suspect in handcuffs and laying [sic] on his back may be considered excessive. Chief Whitson, Summary, November 4, 2010, at 2.

So, even if Chief Whitson's description of the video was hearsay, his observations were sufficiently corroborated by Claimant's admissions [7] in his Incident Investigation Report that Claimant struck the suspect in the chest when he was handcuffed and on the ground. Claimant's admissions sufficiently corroborate Chief Whitson's statement to entitle it to probative value.[8] The Board's determination that Claimant committed willful misconduct through his use of excessive force was supported by substantial evidence.

 Claimant next contends that the Board failed to consider mitigating circumstances which provided good cause for his violation of the use of force policy. Claimant asserts that the suspect was kicking at him as he attempted to move him into the police car. Claimant argues that he used the force necessary to ensure his safety and those of the other officers at the scene, given that the suspect was much larger than he, that the suspect was drunk, and it was dark. Claimant did not raise this "good cause" argument before the referee or the Board. This Court may not consider these contentions when they were not raised previously. *Grever v. Unem-*

*ployment Compensation Board of Review,* 989 A.2d 400 (Pa.Cmwlth.2010).

Accordingly, this Court affirms.

### ORDER

AND NOW, this 7th day of March, 2012, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

**Mitchell M. NOVITSKY and Deena Spindler, Personal Representatives of Florence D. Novitsky, Deceased, Petitioners**

v.

### DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 3, 2012.

Decided March 8, 2012.

Publication Ordered May 15, 2012.

---

Petitioners, pro se.

W. Scott Foster, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This matter is an appeal from a final order of the Department of Public Welfare (the Department), allowing the claim of the Commonwealth Office of Inspector General (OIG) for $72,538.28 in overpayments of Medical Assistance long term care benefits paid by the Department on behalf of Florence Novitsky (Recipient). Recipient's husband, Rabbi Abraham Novitsky, who had filed the Medical Assistance claim on

behalf of Recipient, petitioned on her behalf for review of the Department's order.[1] We affirm.

OIG determined that Recipient was ineligible for Medical Assistance long term care benefits as a result of unreported transfers of $663,387.05 in funds, and sent a letter to Recipient's husband as her representative demanding repayment of the $72,538.28 in benefits that the Department had made on behalf of Recipient. Recipient's husband requested a hearing, and the case was heard by an Administrative Law Judge (ALJ) of the Department's Bureau of Hearings and Appeals (BHA). The ALJ held two hearings in this matter over two months apart to give Recipient's husband time to gather and provide evidence that the transferred funds were not owned by Recipient or her husband. (Record Item (R. Item) 4, ALJ Adjudication at 1, Supplemental Reproduced Record (Supp. R.R.) at 63b; R. Item 8, April 7, 2010 Hearing Transcript (H.T.) at 98–106, 110–116 and June 16, 2010 H.T. at 5, Supp. R.R. at 188b–196b, 200b–206b, 212b.) At Recipient's husband's request, petitioner Mitchell Novitsky, who is an attorney, participated in the second hearing and the ALJ explained to him the documentation that was needed concerning the transferred funds. (R. Item 8, June 16, 2010 H.T. at 40–91, Supp. R.R. at 247b–298b.)

The facts as found by the ALJ are as follows and are largely undisputed. On November 18, 2008 and August 18, 2009, Recipient's husband signed applications seeking Medical Assistance long term care benefits for Recipient. (R. Item 4, ALJ Adjudication Finding of Fact (F.F.) ¶ 3, Supp. R.R. at 65b.) In those applications, Recipient's husband executed an affidavit certifying subject to penalties provided by law that he had read the applications and that the information provided was true and complete. (R. Item 4, F.F. ¶¶ 3–4, Supp. R.R. at 65b.) The 2008 application answered that neither Recipient nor Recipient's husband had closed or transferred any bank accounts, certificates of deposit or other assets within the past 36 months; the 2009 application left that question unanswered. (R. Item 4, F.F. ¶ 5, Supp. R.R. 65b.) However, between September 1, 2007 and July 20, 2009, less than 15 months before the first application for benefits, Recipient's husband transferred $663,387.05 from bank accounts and certificates of deposit in his name. (R. Item 4, F.F. ¶¶ 2, 7 and Adjudication at 20, Supp. R.R. at 65b–66b, 82b.) Although the applications asked for a listing of all bank accounts that included either Recipient's or Recipient's husband's name and money, neither the 2008 nor the 2009 application listed any of these accounts, and neither Recipient nor her husband disclosed the $663,387.05 in asset transfers to the Department. (R. Item 4, F.F. ¶ 10 and Adjudication at 20, Supp. R.R. at 66b, 82b.) Recipient did not meet the eligibility requirements for Medical Assistance long term care benefits if the assets available to her exceeded $8,000. (R. Item 4, Adjudication at 20, Supp. R.R. at 82b.) The Department paid $72,538.28 in benefits on behalf of Recipient for the period October 2008 through September 2009. (R. Item 4, F.F. ¶ 6, Supp. R.R. at 65b–66b.)

The ALJ concluded that there had been no showing that the $663,387.05 was not owned by Recipient's husband and that, therefore, on the record as it stood at the close of the hearings, Recipient had been ineligible for benefits and OIG's overpayment claim should be allowed. (R. Item 4, Adjudication at 20–21, Supp. R.R. at 82b–

---

1. After this appeal was filed, both Recipient's husband and Recipient passed away and the personal representatives of Recipient, their son, Mitchell M. Novitsky, and daughter, were substituted as petitioners.

83b.) Nonetheless, the ALJ gave Recipient and her representatives an additional 30–day period to provide documentation that the funds were owned by someone other than Recipient or her husband or were otherwise not available to Recipient or her husband. (R. Item 4, Adjudication at 20–21 and Order, Supp. R.R. at 82b–84b; R. Item 8, June 16, 2010 H.T. at 58–74, 76–82, 88–91, Supp. R.R. at 265b–281b, 283b–289b, 295b–298b.) The ALJ ordered that:

> 1. If the Appellant [Recipient] verifies by July 19, 2010 that at least $655,387.05 were owned by a person other than her or her spouse or were not available to them, then the OIG claim in its February 8, 2010 letter is denied and the Appellant's appeal is sustained.
>
> 2. If the Appellant does not verify by July 19, 2010 that any of the $663,387.05 were owned by a person other than her or her spouse, then the OIG claim in its February 8, 2010 letter is allowed and Appellant's appeal is denied.
>
> 3. If the Appellant verifies by July 19, 2010 that assets available to her or her spouse exceed $8,000 but are less than $80,538.28 then OIG is directed to recalculate the claim against her and issue a revised claim letter. The revised claim shall be the available assets minus

$8,000 the resources limit for the Appellant's MA category.

(R. Item 4, Order, Supp. R.R. at 84b.)

The BHA affirmed the ALJ's decision. Recipient and her representatives did not file any additional documentation with respect to any of the $663,387.05 that was the subject of the ALJ's findings or order. Instead, Recipient's husband made a request for reconsideration by the Secretary of the Department and provided documentation only with respect to accounts at a different bank that were not the subject of the ALJ's findings and order. (R. Item 5, Application for Reconsideration, Supp. R.R. at 85b–87b.) The Secretary on reconsideration upheld the BHA order and allowed OIG's overpayment claim. This appeal followed.[2]

■ Medical Assistance benefits are restricted to those whose income and resources are not sufficient to meet their necessary medical costs. *Godown v. Department of Public Welfare*, 813 A.2d 954, 956 (Pa.Cmwlth.2002); *Bird v. Pennsylvania Department of Public Welfare*, 731 A.2d 660, 663 (Pa.Cmwlth.1999); *Ptashkin v. Department of Public Welfare*, 731 A.2d 238, 240 (Pa.Cmwlth.1999). Assets owned by the recipient's spouse are resources available to the recipient. 55 Pa.Code §§ 178.2, 178.6(b)(10); *Lancashire Hall Nursing & Rehabilitation Center v. Department of Public Welfare*, 995 A.2d 540, 543–45 (Pa.Cmwlth.2010).[3] The Depart-

---

**2.** Our review is limited to determining whether the Department's decision is in violation of constitutional rights, whether an error of law was committed, and whether the necessary factual findings are supported by substantial evidence. 2 Pa.C.S. § 704; *Lancashire Hall Nursing & Rehabilitation Center v. Department of Public Welfare*, 995 A.2d 540, 542 n. 1 (Pa.Cmwlth.2010); *LaFond v. Department of Public Welfare*, 933 A.2d 159, 162 n. 2 (Pa. Cmwlth.2007); *Hudock v. Pennsylvania Department of Public Welfare*, 808 A.2d 310, 312 n. 2 (Pa.Cmwlth.2002).

**3.** While one-half of Recipient's and her husband's combined resources up to a federally

imposed maximum allowance would be excluded from the Recipient's eligibility determination, 42 U.S.C. § 1396r–5(c); *Wisconsin Department of Health & Family Services v. Blumer*, 534 U.S. 473, 482–83, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002); *Lancashire Hall Nursing & Rehabilitation Center*, 995 A.2d at 543–44, that is not an issue in this case as the transferred amounts were many times more than twice the $8,000 resource limit and the evidence before the ALJ showed that the maximum amount of that community spouse resource allowance here was $109,560, far less than the transferred amounts. (R. Item 8, April 7, 2010 H.T. at 62–67, Supp. R.R. at 152b–157b.)

ment is the payor of last resort. 55 Pa. Code § 178.6(a); *Godown,* 813 A.2d at 956; *Bird,* 731 A.2d at 667; *Ptashkin,* 731 A.2d at 241.

■ The transfers by Recipient's husband made Recipient ineligible for benefits if those funds were owned by him. 55 Pa.Code § 178.104a; *Lancashire Hall Nursing & Rehabilitation Center,* 995 A.2d at 543. Under Section 1408(c)(6)(i) of the Public Welfare Code,[4] where unreported property or transfers make a recipient ineligible for Medical Assistance benefits, the Department is entitled to repayment of benefits up to the amount of the undisclosed property or transfers. 62 P.S. § 1408(c)(6)(i); *Maloy v. Department of Public Welfare,* 998 A.2d 661, 663–64 (Pa. Cmwlth.2010) *LaFond v. Department of Public Welfare,* 933 A.2d 159, 164 (Pa. Cmwlth.2007). Section 1408(c)(6)(i) provides:

> If it is found that a recipient or a member of his family or household, who would have been ineligible for medical assistance, possessed unreported real or personal property in excess of the amount permitted by law, the amount collectible shall be limited to an amount equal to the market value of such unreported property or the amount of medical assistance granted during the period it was held up to the date the unreported excess real or personal property is identified, whichever is less. Repayment of the overpayment shall be sought from the recipient, the person receiving or holding such property, the recipient's estate and/or survivors benefiting from

receiving such property. Proof of date of acquisition of such property must be provided by the recipient or person acting on his behalf.

62 P.S. § 1408(c)(6)(i).

Recipient and her representatives have not disputed the ALJ's findings that $663,387.05 was transferred from bank accounts and certificates of deposit in Recipient's husband's name and that those transfers and bank accounts were unreported. Recipient and her representatives also have not disputed the ALJ's determination that Recipient was ineligible for benefits if those funds were owned by Recipient's husband without restriction or his finding that the Department paid $72,538.28 in Medical Assistance benefits on behalf of Recipient.

Recipient's representatives argue that at least some of the transferred assets were not owned by Recipient's husband, asserting that "[m]any of the accounts in question were custodial accounts that belonged to his grandchildren." (Petitioners' Br. at 4.) The evidence before the ALJ, however, showed that $423,607.20 of the funds, an amount that made Recipient ineligible for benefits, were in Recipient's husband's name alone with no other name or restriction on the account or certificate of deposit. (R. Item 3, Exhibit C–4, Supp. R.R. at 41b–42b, 44b.)[5]

It was Recipient's burden to demonstrate that these funds were not owned by Recipient's husband. 55 Pa.Code § 178.4(e), (f)(2)(i). Even if Recipient's husband believed or intended that the

---

**4.** Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 1408(c)(6)(i).

**5.** The record shows that of the remaining funds, $179,774.78 was in certificates of deposit which listed Recipient's husband as a custodian or for the benefit of another and $60,005.07 was jointly in the names of Recipient's husband and one of his sons. (R. Item

3, Exhibit C–4, Supp. R.R. at 43b, 45b.) While it is not necessary to resolve whether these amounts were available to Recipient, additional verification was necessary to overcome the presumption that the $179,774.78 and half of the $60,005.07 were available to Recipient. 55 Pa.Code § 178.4(f)(2)(ii),(iii),(iv).

money belonged to or should be used for persons other than himself and his wife (R. Item 8, April 7, 2010 H.T. at 98, 103, Supp. R.R. at 188b, 193b; R. Item 5, Application for Reconsideration, Supp. R.R. at 86b), absent documentation that he lacked ownership or that his ownership was restricted, those funds were an available resource for Recipient and made her ineligible for benefits. *LaFond*, 933 A.2d at 164.

The ALJ repeatedly explained to both Recipient's husband and petitioner Mitchell Novitsky what documentation was needed to overcome the presumption that funds in Recipient's husband's name were available to Recipient, and gave two extensions of time to provide such evidence. (R. Item 4, Adjudication at 20 and Order, Supp. R.R. at 82b, 84b; R. Item 8, April 7, 2010 H.T. at 79, 86, 98–99, 101–106, 110–116 and June 16, 2010 H.T. at 58–74, 76–81, 88–91, Supp. R.R. at 169b, 176b, 188b–189b, 191b–196b, 200b–206b, 265b–281b, 283b–288b, 295b–298b.) Despite ample notice and opportunity, Recipient and her representatives submitted no evidence whatsoever that any person other than Recipient's husband provided any of the funds in any of the accounts and certificates of deposit, produced no documentation that there were restrictions on Recipient's husband's use of any of the funds and did not even state to whom any of the transfers were made.

Recipient's representatives also argue that Recipient's husband did not intentionally mislead the Department, that it is unfair for the Department to recover the overpayment on the grounds that the Department should never have paid benefits or should have determined her ineligibility earlier, and that the overpayment should be collected from the nursing home to which the benefits were paid. (Petitioners' Br. at 3–4; Petitioners' Reply Br. at 2.)[6] None of these assertions are valid defenses to an overpayment claim.

The only issues on a Medical Assistance overpayment claim under Section 1408(c)(6)(i) of the Public Welfare Code are whether the recipient was ineligible for benefits as a result of unreported resources, the amount of the overpayment, and whether the unreported resources are greater than the overpayment. 62 P.S. § 1408(c)(6)(i); *LaFond*, 933 A.2d at 164. In *LaFond*, this Court specifically rejected the contention that equitable arguments can bar an overpayment claim. *LaFond*, 933 A.2d at 164. There, the property in question was entirely paid for by a third party, the recipient's son, the son in putting recipient's name on the property had transferred an asset to recipient without consideration and delayed his need for Medical Assistance benefits, and the recipient did not consider himself an owner of the property. *Id.* at 161–64. This Court ruled that proceeds from the sale of the

---

**6.** To the extent that Recipient's representatives argue that the Department lacked jurisdiction over Recipient because the application was signed by her husband or because Recipient and her husband were no longer in Pennsylvania at the time of the adjudication (Petitioners' Br. at 2–3; Petitioners' Reply Br. at 2), those contentions are without basis. The evidence before the ALJ established that the application provided that it could be completed by a spouse acting as the recipient's representative regardless whether the representative held a power of attorney, that Recipient's

husband admitted that he acted for her in signing the application, and that Recipient's husband held a power of attorney. (R. Item 3, Exhibits C–1 and C–2, Supp. R.R. at 15b, 34b; R. Item 8, April 7, 2010 H.T. at 16, Supp. R.R. at 106b.) Recipient and her husband were both Pennsylvania residents at the time the benefits were sought and throughout the period for which all the benefits were paid. (R. Item 3, Exhibits C–1, C–2 and C–5, Supp. R.R. at 16b, 24b, 26b, 34b, 49b–51b; R. Item 8, April 7, 2010 H.T. at 6, Supp. R.R. at 96b.)

property were resources available to the recipient and upheld an overpayment claim, concluding that "[a]lthough this result may appear inequitable to Son, the language of Section 1408(c)(6)(i) is clear and cannot be disregarded." *Id.* at 164.

Here, there has not even been any showing of unfairness. The Department cannot be faulted by Recipient's representatives for not determining that Recipient was ineligible where Recipient's representative, her husband, failed to disclose the necessary information to the Department despite specific requests. In addition, nothing in Recipient's representatives' equitable arguments negates her ineligibility for the benefits that were paid on her behalf.

The Department was entitled to seek to recover the overpayment from Recipient rather than requesting repayment from the nursing home. Section 1408(c)(6)(i) expressly permits the Department to seek repayment from the recipient and gives the Department discretion to choose to seek repayment from the recipient rather than from another party from whom collection of overpayment is authorized. 62 P.S. § 1408(c)(6)(i); *Maloy,* 998 A.2d at 664.

The Department correctly applied the law and its determination is supported by substantial evidence. Accordingly, we affirm the Department's Order allowing the OIG's claim for overpayment of Medical Assistance benefits.

### ORDER

AND NOW, this 8th day of March, 2012, the order of the Department of Public Welfare in the above matter is affirmed.